EUTAW ENTERPRISES, INC. ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 203, September Term, 1965.]

*Decided March 11, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER and McWILLIAMS, JJ., and RAINE, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Nathan Patz* for the appellants.

*Martin B. Greenfeld,* with whom was *Joseph Allen, City Solicitor of Baltimore,* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore promulgated two ordinances which prospectively excluded check cashing and money changing operations from residential and office use districts, made such uses already in existence nonconforming uses and required their cessation within a tolerance or amortization period of eighteen months. The appellants, a check cashing corporation, operating in such a district, and its landlord, a nearby church, having sought unsuccessfully below to have the provisions of the ordinances requiring the discontinuance of the check cashing business within eighteen months declared unconstitutional and inoperative as to them, felt that, although

their hearts were sick within them, their grief need not be beyond healing if balm could be found in the Gilead of the Court of Appeals.

From 1950 to 1959 Stan's Check Cashing Service operated at 31 Hopkins Place in Baltimore, a commercial area, in order to be very close to the office of the Employment Security Board, at Hopkins Place and Lombard Street, at which each week thousands of unemployment compensation checks were distributed. When the distribution center moved in 1959 to a new building on the west side of Eutaw Place south of Dolphin Street, Stan's followed it, moving its place of operation to the first floor of 1202 Eutaw Place, on the west side of that street just north of Dolphin Street. The 1200 block of Eutaw Place was then and still is in a residential and office use district. On December 20, 1959, the Zoning Enforcement Officer of Baltimore issued a permit for the use of 1202 Eutaw Place for "14 apartments and first-floor office-insurance and payroll services and check exchange, and one non-illuminated name plate not exceeding one square foot in area attached to exterior of building." The Board of Municipal and Zoning Appeals affirmed this action, and protestants appealed to the Baltimore City Court. On May 23, 1960, Judge Harlan affirmed the Board. He noted that check cashing businesses were not specifically excluded from residential and office use districts and considered and disposed of a contention that since the ordinance prohibited "a work or pay distribution center" in such a district the business of cashing checks should likewise be deemed to be excluded inasmuch, it was claimed, a pay distribution center and a check cashing service are virtually indistinguishable, saying that alike as the two well may be the literal words of the zoning ordinance must control. Thereupon, after the expiration of the thirty-day period during which an appeal to this Court could have been taken, Stan's sold its check cashing business to the appellant, Eutaw Enterprises, Inc., which, since the very early summer of 1960 has continued to operate it at the same location under the same name.

On February 1, 1960, months before the purchase, an ordinance then numbered 433 had been introduced in the City Council to add new §§ 9 (d) (5-b) and 13 (d-1) to Art. 40 of the

Baltimore City Code (1950 Ed.), title "Zoning" as said article was revised by Ordinance 711, approved May 21, 1953, to exclude "check cashing, money changing or similar types of agencies" from residential and office use districts and to require all "check cashing, money changing or similar types of agencies situated in residential or office use districts, and in residential use districts at the time this ordinance becomes effective" to remove by June 1, 1960. On March 29, 1960, the Board of Municipal and Zoning Appeals advised the City Council that the removal provision should not be passed inasmuch as the City Solicitor had given an opinion on March 11, 1960, that "a zoning ordinance may require the elimination of certain non-conforming uses but such zoning regulations must allow a reasonable time for such elimination and [that] in his opinion the ordinance * * * would not be reasonable in that respect" in that it would require elimination of check cashing, money changing or similar types of agencies by June 1, 1960, or in some three months from the likely time of passage of the ordinance.

The Zoning Commission advised the Planning Commission, preparatory to the latter giving its views to the Council, that it would be desirable "to prohibit check-cashing agencies from the residential and office use districts" because it appeared to the Commission that:

> "check-cashing agencies, involving the exchange of money for which a charge is levied, great numbers of people congregating in the streets and coming in and out of buildings, street advertising, solicitation and other enticements, were not anticipated as an appropriate residential and office use nor is it considered a desirable use in this district."

It said also that "the original intent and purpose of the residential and office use district was to provide for professional and ordinary business offices, not involving display, sale, exchange or storage, in connection with residential use of buildings." Despite its desire to see check cashing operations out of residential districts, the Zoning Commission felt that the termination period for existing check cashing businesses should be eliminated from the proposed ordinance because detailed and

comprehensive recommendations for a zoning law as to the control and removal of all nonconforming uses were then under consideration and it would be advisable to deal with all such uses in a general law.

The Planning Commission advised the president and members of the City Council on September 26, 1960, that it approved the proposed amendment to § 9 of the zoning ordinance and found it reasonable because "had such uses [check cashing, money changing and similar types of agencies] been prevalent when the residential and office use district section was enacted, they probably would have been excluded then." The Commission pointed out that such "types of agencies" "have resorted to various techniques involving large and obnoxious signs, street solicitors, handbills and other enticements [handing out free cigarettes, coffee and Coca-cola to waiting patrons as did Eutaw at a yearly cost of some $2,500] * * *" but felt that the termination provisions of § 13 should be eliminated and the closing of existing businesses deferred until enactment of the proposed new comprehensive zoning plan for Baltimore, which dealt with the treatment and elimination of all nonconforming uses generally and in a detailed and sophisticated fashion.

The City Council nevertheless, on November 22, 1960, enacted the ordinance as Number 465 and included an eighteen-months' toleration period during which check cashing businesses in residential and office use districts must be closed. On March 22, 1961, the Zoning Enforcement Officer wrote Eutaw notifying it of the passage of Ordinance 465 and its provisions, including the requirement that check cashing businesses remove from a residential and office use district by June 1, 1962. Eutaw says that it was not until receipt of this letter that it knew anything of Ordinance 465. On April 4, 1962, the City Council enacted a comprehensive zoning law, Ordinance 1162, dealing with all nonconforming uses. The removal provisions of Ordinance 465 were repealed and in lieu thereof the provisions of § 13.F.7 of Ordinance 1162 were made applicable to provide the following:

> "*Termination.* Check-cashing, money-changing and similar types of agencies operated primarily for the cashing of checks or changing of money and situated

in residential and office use districts and residential use districts shall be discontinued and cease not later than June 1, 1962. Provided, further, that when any district is hereafter reclassified as residential and office use or residential use, any such check-cashing, money-changing or similar type of agency situated in such reclassified district shall be discontinued and cease not later than twelve months after the effective date of the ordinance reclassifying the district."

On May 31, Eutaw and the Pentecostal Faith Church, Inc., the landlord of Stan's place of business, filed a bill alleging that Eutaw had bought the check cashing business in reliance on the judicially established right of such a business to operate in a residential and office use district and had paid $10,000 for it, "virtually all of which was for good will," that Eutaw pays more rent to the Church than it could get from another tenant and the Church needs the extra money, that Eutaw operates in a law-abiding and quiet manner, that Eutaw was at the time of the enactment of the ordinances and still is the only check cashing business operating in a residential and office use district, that Ordinances 465 and 1162 are unconstitutional as to Eutaw and the Church because they are discriminatory, destroy vested rights, and seek to terminate a use which is not detrimental to the public health, safety or welfare and because they are directed at but one such business. They asked the court "to judicially declare, as applied to each of the Complainants herein," that § 13 (d-1) (the termination provisions) of Ordinance 465 and § 13.F.7 (the same provisions) of Ordinance 1162 are invalid and of no effect.

After a hearing, Judge Sodaro on January 28, 1965, held that "Ordinance No. 465 and Ordinance No. 1162, insofar as they apply to the complainants, are valid and constitutional" and added: "In lieu of filing a formal opinion, I am adopting the Memorandum of Law filed by the City Solicitor * * *."

Before stating our reasons for agreeing with the conclusions of Judge Sodaro, two preliminary matters may appropriately be mentioned.

No point is raised as to the right of Eutaw and the Church to seek relief in a court of equity before they had exhausted

the administrative remedies under the zoning laws, in all like-lihood because their claims were that the ordinances were funda-mentally and wholly unconstitutional, and heretofore in such instances direct attacks in a court of equity have been per-mitted. *Poe v. Mayor and City Council of Baltimore,* 241 Md. 303 (recognizing the rule but finding it inapplicable on the facts).

Eutaw and the Church did not pray that the chancellor de-clare the challenged ordinances unconstitutional on the ground that check cashing agencies could not validly be excluded pro-spectively from residential and office use districts, nor do they make this contention here. We see no sound basis on which they could do so. The Zoning Enabling Act, delegating zon-ing powers to Baltimore, Code (1957), Art. 66B, §§ 1-9, makes this plain. Section 1 authorizes the Mayor and City Council to "regulate and restrict * * * the location and use of buildings, structures, and land for trade, industry, residence, or other pur-poses." Section 2 provides that the Council may divide the city into districts "and within such districts it may regulate and re-strict the * * * use of buildings, structures, or land." Section 3 provides that "such regulations shall be made with reasonable consideration, among other things, to the character of the dis-trict and its peculiar suitability for particular uses * * *."

Generally, a law that draws lines or makes classifications is safe from attack on the ground that it discriminates or violates the constitutional requirement of equal protection because the courts consistently have held that the legislative body

"* * * has the widest discretion in classifying those who are to be regulated and taxed. Only if the group-ing is without any reasonable basis, and so entirely arbitrary, is it forbidden. * * * If any state of facts reasonably can be conceived that would sustain a classi-fication, the existence of that state of facts as a basis for the passage of the law must be assumed. The bur-den is on him who assails a classification to show that it does not rest on any reasonable basis." *Allied American Co. v. Comm'r,* 219 Md. 607, 623.

The same tests have been applied to general classifications made by zoning laws under the delegations of the Enabling

Act. In *Grant v. City of Baltimore*, 212 Md. 301, 316, we said that the City Council could have found that billboards in residential areas so seriously incommoded the health, comfort and general welfare that the benefit to the public good brought about by their removal from such areas substantially outweighed the resulting harm to individuals, and added: "If it does not clearly appear that this legislative finding was unreasonable and arbitrary—almost demonstrably wrong from the record—the courts may not disturb it."

In the present case the advisory bodies agreed that check cashing activities were not a proper use in residential and office use areas and gave as reasons the facts that they cause the congregation of numbers of people on the streets in front of and near their places of operation in the process of their going in and coming out of such places (sometimes as many as six hundred a day in Eutaw's case), and that they bring about advertising and personal solicitations on the streets. Certainly the City Council could reasonably and properly have believed these things to be inconsistent and incompatible with uses customary in a residential and office use district, and validly have determined that check cashing uses were detrimental to the public health, comfort and welfare in such districts to the degree that they should be excluded from them while at the same time feeling that other uses permitted as nonconforming business uses which occasionally cash checks for customers need not be eliminated. *Grant v. City of Baltimore, supra; Dobres v. Schwartzman,* 191 Md. 19 (denial of right to use part of a home as a beauty parlor upheld); *Anne Arundel County v. Ward,* 186 Md. 330; *Jack Lewis, Inc. v. Baltimore,* 164 Md. 146; *Lipsitz v. Parr,* 164 Md. 222.

The essence of the complaint of Eutaw and the Church is, first, that it is impermissible to make a zoning use which is valid under existing law invalid and to order its cessation, and, second, that if it be assumed that this is permissible the tolerance period established was too short.

We think that both contentions must fail. In *Grant* (the holdings of which we expressly reaffirmed in *Stevens v. City of Salisbury,* 240 Md. 556), we held that an ordinance of the Mayor and City Council of Baltimore pro-

viding that billboards, which were nonconforming uses in residential districts and had been since the start of zoning in Baltimore, must be removed from such districts within five years, was reasonable and constitutional as to the owners of land which was leased to the displayers of the billboards and as to the displayers. We pointed out that billboards were not nuisances per se, and said at page 308: "It has become apparent that if nonconforming uses are to be dealt with effectively it must be under the law of zoning, a law not limited in its controls to harmful and noxious uses in the common law sense," and pointed out that many courts had held that legislatures could require that nonconforming uses cease after a reasonable and appropriate specified time. We noted that uses of property which are under the attendant circumstances detrimental to the health, comfort, safety or welfare of society may be prohibited under the police power, even though the exercise of that power causes inconvenience or loss to various individuals, and added at pages 315-16:

> "The distinction between an ordinance that restricts future uses and one that requires existing uses to stop after a reasonable time, is not a difference in kind but one of degree and, in each case, constitutionality depends on overall reasonableness, on the importance of the public gain in relation to the private loss.
>
> \* \* \*
>
> "There is no difference in kind, either, between limitations that prevent the adding to or extension of a nonconforming use, or provisions that the right to the use is lost if abandoned or if the structure devoted to the use is destroyed, or the denial of a right to substitute a new use for the old, all of which are common if not universal in zoning laws and all of which are established as constitutional and valid, on the one hand, and a requirement, on the other, that an existing nonconformance must cease after a reasonable time. The significance and effect of difference in degree in any given case depends on circumstances, environment and length of the period allowed for amortization."

The holdings of *Grant* control this case. The ordinances here complained of were constitutional exercises of legislative power. Ordinance 465, when it validly excluded check cashing operations from residential zones from the date of its enactment, necessarily made such operations then already in existence in such zones nonconforming uses. The fact, if it is a fact, that Eutaw was the only commercial check casher in a residential district when the ordinances were enacted and that the City Council knew this, would not make them invalid as to Eutaw. It had no vested right in the zoning classification under which it operated and no right to expect that the classification of the property in which it operated would remain unchanged indefinitely. The ordinances, passed after deliberation and full consideration of expert and professional advice were general in application and drawn to apply in the same way, presently and in the future, to all similarly situated.

As *Grant* suggested, there is no difference in kind, merely of degree, between a use which has been nonconforming since zoning began and one that is made nonconforming by a reclassifying ordinance, and, as *Grant* held, one in existence when zoning began may be required to stop. Because every zoning regulation affects property owned by someone at the time of its enactment, it brings about some curtailment of property rights either by restricting prospective uses or prohibiting existing ones. The prohibition of existing rights may be more likely to impose greater hardship or loss upon affected individuals than the restriction of prospective uses and that is one reason why we said in *Grant* at page 316: "The significance and effect of difference in degree in any given case depends on circumstances, environment and length of the period allowed for amortization."

Consideration of the circumstances and environment shows that the testimony clearly permitted, as the memorandum of the City Solicitor adopted by Judge Sodaro as his opinion suggested and urged, a finding that the twelve hundred block of Eutaw Place was essentially a quiet residential block save for the stirs caused daily by the hundreds of patrons of Eutaw, which in order to attract customers exhibited many of the unattractive occupational traits of check cashing agencies which

the expert zoning bodies, and presumably the City Council, found incompatible with residential and customary accessory office uses. The testimony similarly permitted further a finding that the thousands of prospective donees of unemployment checks who from time to time lined the sidewalks of Eutaw Street south of Dolphin were in a nonresidential zone, that they did not emanate from, travel through, or enter or affect the twelve hundred block of Eutaw Place except as to the some ten per cent of them, who came to have their checks cashed at Eutaw.

The considerations which made valid prospectively the provisions of Ordinance 465 excluding check cashing operations from residential and office use districts support as reasonable the provisions of that ordinance and of Ordinance 1162, requiring cessation of the use made nonconforming within a specified time. If a use would be incompatible in a residential and office district if commenced after the enactment of the ordinance, it is equally incompatible if it is in existence when the ordinance is passed. We see nothing in the circumstances or environment to invalidate Ordinances 465 and 1162.

The tolerance period of eighteen months for the elimination of Eutaw's business is as long as many which have been judicially approved as reasonable. *Mile Road Corp. v. City of Boston* (Mass.), 187 N. E. 2d 826, *appeal dismissed,* 373 U. S. 541, 10 L. Ed. 2d 687, upheld an ordinance requiring immediate cessation of the use of land for a dump, as did *Hadacheck v. Los Angeles,* 239 U. S. 394, 60 L. Ed. 348, of use of land for a brickyard. See also *Franklin Furniture Company v. City of Bridgeport* (Conn.), 115 A. 2d 435, and *City of Seattle v. Martin* (Wash.), 342 P. 2d 602 (one year for termination of a use not situated in a building). See also *Spurgeon v. Board of Com'rs of Shawnee County* (Kan.), 317 P. 2d 798 (two years for removal of auto wrecking yards and junk yards).

In the present case the reasonableness of the eighteen months' period of grace need not be passed on as a basis of decision. Because of the length of time the litigation has dragged on, during which Stan's has continued uninterruptedly to cash checks, Eutaw and the Church have had some five and a half years since November 1960 when Ordinance 465 was passed to enjoy

and profit from Eutaw's operation at 1202 Eutaw Place. In their bill of complaint, Eutaw and the Church alleged that if the termination provisions of Ordinances 465 and 1162 could constitutionally be enacted, "an extended period of time would have to be permitted for the amortization of the investment and costs and rights, theretofore made and existing, before any such alteration in use or compelled cessation of use could be required, and that such period would, each of these complainants avers, exceed five years from the date of adoption of any such ordinance."

The lease which Eutaw had with the Church when it began to operate Stan's as it owner was for five years with no right of renewal. The 1963 income tax return of Eutaw, offered in evidence, shows that it had depreciated its $10,000 purchase price for Stan's at the rate of $2,000 a year and by December 31, 1963, the accumulated depreciation was over $6,000. In two more years, that is, at December 31, 1965, the entire purchase price would have been fully depreciated. The 1963 return also showed a net loss for the year of $364.39.

Since Eutaw has had the five-year period it claimed was necessary and has fully depreciated its investment, the termination provisions of Ordinances 465 and 1162 cannot be said to have been unreasonable or invalid in application to Eutaw.

The Church is in no better position to complain. It has enjoyed the right to receive rent from Eutaw for the five-year period it claimed it should have (although it voluntarily lowered the rent to help pay the costs of litigation) and the portion of its building Eutaw has used remains rentable for some permitted office or business use or for residential tenants. The termination provisions of the ordinances were valid as to the Church under *Grant*.

The appellants claimed below and claim here that the titles of the ordinances were misleading and deceptive and that, therefore, the ordinances were invalid. In *Buck v. Bell*, 274 U. S. 200, 208, 71 L. Ed. 1000, 1002, the Supreme Court characterized reliance on the equal protection clause as the "usual last resort of constitutional arguments." We think the characterization often can be applied to claims of unconstitutionality on the grounds of an invalid title, and that this is true in this case.

The pertinent part of the title to Ordinance 465 is:

"* * * providing that check cashing, money changing or similar types of agencies shall be excluded from residential and office use districts, specifying the date when this exclusion shall be effective, and further providing for the manner in which this ordinance will affect check cashing, money changing or similar types of agencies which are nonconforming uses."

The title to Ordinance 1162 in pertinent part said:

"* * * and to repeal Section 13 of said Article, as last amended by Ordinance No. 711, approved May 21, 1953, and by Ordinance No. 465, approved November 22, 1960, and to ordain in lieu thereof a new Section 13 to stand in place of the section so repealed; relating generally to nonconforming uses of land, buildings, structures or premises, non-complying lots and non-complying buildings, structures and densities."

We pointed out in *Allied American Co. v. Comm'r, supra* at 615, that "a title to an act need not be an index to all that it contains and need not set forth all of its exclusions or conditions. It is a label and need only set forth its object, not its product."

We have no doubt that both titles were sufficient to advise those reading them of the objects and purposes of the legislation and what it was designed to accomplish. We synopsized the rule in *McBriety v. Baltimore City,* 219 Md. 223, 241: "The title of the ordinance satisfies the charter or constitutional requirement if it fairly advises the City Council and the public of the real nature and subject matter of the legislation sought to be enacted." The titles of the ordinances before us met the tests established by the cases.

*Order affirmed, with costs.*