# ROCKVILLE FUEL AND FEED CO., INC. *v.* CITY OF GAITHERSBURG, MARYLAND

[No. 364, September Term, 1971.]

*Decided June 14, 1972.*

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and ROBERT E. CLAPP, JR., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Robert L. Burchett,* with whom were *Miller, Miller & Canby* on the brief, for appellant.

*Joe M. Kyle* for appellee.

BARNES, J., delivered the opinion of the Court.

In *Rockville Fuel and Feed Co. v. Board of Appeals of Gaithersburg,* 257 Md. 183, 262 A. 2d 499 (1970), we decided that under the applicable zoning ordinance of the City of Gaithersburg, the appellant in the present case,

Rockville Fuel and Feed Company, Inc. (Rockville Fuel or Plaintiff), was entitled to have its application for a special exception to construct and operate a concrete batching plant on its 3.6069 acre tract of land in Gaithersburg located in an I-2 zone (Heavy Industrial), there being no sufficient evidence before the Board of Appeals to justify the denial by it of the application. After our decision, the Mayor and Council of Gaithersburg enacted a text amendment to the Gaithersburg zoning ordinance which removed the "concrete or cement products manufacture" use as a permitted use in the I-2 zone and placed that use in the prohibited uses in that zone. Rockville Fuel, having been denied a permit to proceed with the construction and operation of its proposed concrete batching plant because of the provisions of the text amendment, filed a suit in equity for declaratory relief and an injunction seeking a declaration of its right "to construct and use the proposed concrete batching plant as set forth in Special Exception Case A-113 and that, as ancillary relief, the Court enter an injunction in this proceeding enjoining the City, its agents, servants and employees from interfering with Plaintiff in his [*sic*] pursuit of a building permit and subsequent construction and use of the proposed plant, in accordance with the Special Exception granted to the Plaintiff in case No. A-113."

The new suit was heard before the Circuit Court for Montgomery County (Levine, J.) on October 14, 1971. Substantially all of the relevant facts were the subject of a stipulation by counsel for the parties and legal memoranda were submitted by them. Judge Levine filed a well-considered and helpful opinion on December 22, 1971, with an order declaring, *inter alia,* "that the denial of a site plan and building permit for the construction of a concrete mixing plant was not illegal." From this order, Rockville Fuel took a timely appeal to this Court.

Judge Levine has stated the facts of the present case so well in his opinion that we shall use his statement of the facts in this opinion. Judge Levine stated:

"Rockville Fuel is the owner of a 3.6069 acre

tract of land within the City of Gaithersburg located on the site of the old Thomas cannery on Chestnut Street adjacent to what is known as the Federline Apartments; however, the site is probably better known for its position at one of the principal entrances to the agricultural grounds, scene of the annual county fair. At all relevant times the property has been zoned I-2 (heavy industrial) as defined by the Gaithersburg Zoning Ordinance. Similarly, the most recent master plan of zoning adopted by Gaithersburg on February 4, 1970, recommends that the subject property be used for commercial-industrial purposes.

"The property was purchased by the Plaintiff in March, 1967, at a cost of $375,000, for the exclusive purpose of building the concrete plant. On March 25, 1968, the Plaintiff filed an application for a special exception pursuant to the zoning ordinance which then included such plants as one of the permitted uses in the I-2 zone. The Board of Appeals for the City of Gaithersburg on December 10, 1968, denied the request for the special exception. From that decision, an appeal was taken to this Court which affirmed the denial. Thereafter, the decision of this Court was appealed to the Court of Appeals of Maryland which on March 4, 1970, filed its opinion reversing this Court and remanding the case for further proceedings in accordance with its opinion. *Rockville Fuel and Feed v. Board of Appeals, supra.* The Court of Appeals held that the application for the special exception had been wrongfully denied and that the Board should grant the application upon remand on such conditions and safeguards as might then be appropriate under the existing ordinance and the evidence adduced before it.

"At their next meeting following the decision

of the Court of Appeals held on March 16, 1970, the Mayor and Council of Gaithersburg adopted a resolution instructing the City Manager to file a zoning text amendment, the sole purpose of which was the deletion of ready-mix concrete plants as a permitted use in the I-2 zone and their inclusion as a prohibited use. This action was taken under circumstances which would reasonably permit an inference that but for the outcome of the case before the Court of Appeals, no such resolution would have been proposed. This follows not only from the timing, which was hardly coincidental, but also from the minutes of that meeting and the court testimony of James W. Hane, a member of both the City Council and the Board of Appeals at the time of the resolution.

"On the following day, the City Manager, acting pursuant to the aforesaid resolution, caused an application for a zoning text amendment to be filed that had as its sole purpose the elimination of ready-mix concrete plants as permitted uses in the I-2 zone, and their inclusion in the list of prohibited uses.

"On March 25, 1970, the Plaintiff filed a site-development plan application in accordance with the requirements of the zoning ordinance. This application required the approval of the City Planning Commission prior to the issuance of a building permit. Pursuant to the mandate of the Court of Appeals issued on April 3, 1970, the Board of Appeals on April 9, 1970, adopted a resolution granting the Plaintiff's application for a special exception. On April 15, 1970, the Planning Commission conducted a public hearing on the zoning text amendment which was proposed for the purpose of deleting ready-mix concrete plants. At that same meeting, the Planning Commission also considered Plaintiff's ap-

plication for the site-development plan and gave it preliminary approval. On May 1, 1970, the Plaintiff attempted to file an application for a building permit to construct the proposed batching plant, but said application was refused because final site-plan approval had not been obtained.

"On May 4, 1970, the Mayor and Council conducted a public hearing on the proposed zoning text amendment. The City Planning Director was the only witness in favor of it and counsel for the Plaintiff was the only witness who testified in opposition thereto. Immediately following the hearing, a pre-prepared resolution granting the application was produced which was adopted. Immediately upon its adoption, it was declared to be an emergency measure, thereby causing it to take effect immediately upon approval by the Mayor rather than twenty days thereafter.[1] In an exchange which took place at that time, it was revealed that no pre-prepared resolution denying the text amendment had been produced or made available; and in response to a request from Plaintiff's counsel, no specific reason for the emergency was given. On May 5, 1970, the Mayor approved the ordinance granting the zoning text amendment.

"On May 6, 1970, the Planning Commission conducted a public hearing on the Plaintiff's site-plan application and disapproved the plan on the basis of the action taken on the preceding day by the Mayor in approving the zoning text amendment to the ordinance. Following preliminary approval given to the site-plan application on April 15, 1970, the Plaintiff had filed amended plans that complied with the re-

---

1. "No point is made by the Plaintiff that the declaration of emergency was contrary to law."

quests of the Planning Commission made on April 15, and hence the amended plans were ready for final approval at the meeting of May 6. As a consequence of the Mayor's approval of the zoning text amendment to the ordinance, concrete mixing plants have not been permitted in the City of Gaithersburg since May 5, 1970.

"On May 19, 1970, the Plaintiff filed a timely appeal from the disapproval of the site plan with the Board of Appeals, alleging *inter alia* that it was arbitrary, capricious, unlawful and unconstitutional. No action has ever been taken on that appeal nor has a building permit ever been issued to the Plaintiff.

"The Plaintiff asserts three basic contentions: (1) that Rockville Fuel had by reason of the Court of Appeals decision acquired a vested right to 'operate a concrete batching plant' which cannot be defeated by the adoption of the amendment to the ordinance; (2) that the ordinance amendment is unconstitutional as applied to the Plaintiff, in that it was not general legislation, but was aimed solely at Rockville Fuel, and that by being applied retrospectively to the Plaintiff, denied it due process and equal protection of the law in violation of the Fourteenth Amendment to the Federal Constitution; and (3) that Gaithersburg was estopped from taking any action denying to the Plaintiff the right to operate the concrete mixing plant."

Rockville Fuel makes the same three contentions before us as it made before the lower court and we will consider them in the order indicated.

## (1)

Rockville Fuel earnestly argued below and before us that the amendatory ordinance cannot constitutionally impair its "vested right" to construct and to operate a

concrete batching plant resulting from our decision in *Rockville Fuel v. Board of Appeals, supra.* Unfortunately for it, our prior decisions and those of our predecessors indicate that Rockville Fuel has no such "vested right."

In *The Richmond Corporation v. Board of County Commissioners for Prince George's County,* 254 Md. 244, 255 A. 2d 398 (1969), we reviewed the Maryland and the general law in regard to "vested rights" in an existing zoning use and stated:

> "In Maryland it is established that in order to obtain a 'vested right' in the existing zoning use which will be constitutionally protected against a subsequent change in the zoning ordinance prohibiting or limiting that use, the owner must (1) obtain a permit or occupancy certificate where required by the applicable ordinance and (2) must proceed under that permit or certificate to exercise it on the land involved so that the neighborhood may be advised that the land is being devoted to that use."
>
> (254 Md. at 255-56, 255 A. 2d at 404.)

It is clear that even the obtention of a building permit in furtherance of a then permitted zoning use does not create a "vested right" constitutionally insulated against a change in the zoning ordinance forbidding the particular use. *Ross v. Montgomery County,* 252 Md. 497, 250 A. 2d 635 (1969). In *Ross,* in which the landowner had a building permit to construct a then permitted apartment hotel and had poured one footing for the building in an attempt to retain the building permit, but later filled in the excavation, we held that the landowners had acquired no "vested right" protecting the proposed use against a subsequent amendment to the applicable zoning ordinance and stated:

> " 'It is idle to say that the issuance of the building permit created a vested right that would render inoperative the Zoning Regulations * * *.' "
>
> (252 Md. at 505, 250 A. 2d at 640.)

We cited with approval and followed the prior decisions of this Court in *Board of County Commissioners of Anne Arundel County v. Snyder,* 186 Md. 342, 46 A. 2d 689 (1946) and *Mayor and City Council of Baltimore v. Shapiro,* 187 Md. 623, 51 A. 2d 273 (1947) and also quoted, with approval, from 2 Rathkopf, *The Law of Zoning and Planning* (3rd ed.) Ch. 57, § 3, at 57-6 to 57-7, as follows:

" '* * * The majority rule, which can be synthesized from the multitudinous decisions in this area, may be stated as follows: A landowner will be held to have acquired a vested right to continue the construction of a building or structure and to initiate and continue a use despite a restriction contained in an ordinance where, prior to the effective date of the ordinance, in reliance upon a permit theretofore validly issued, he has, in good faith, made a substantial change of position in relation to the land, made substantial expenditures, or has incurred substantial obligations. * * *' " (252 Md. at 506, 250 A. 2d at 640.)

In *Malmar Associates v. Board of County Commissioners for Prince George's County,* 260 Md. 292, 272 A. 2d 6 (1971), the landowner had planned the construction of an apartment project in three sections. One section had been completed when the zoning ordinance was amended to require a special exception to permit the number of two and three bedroom apartments in any apartment building to exceed certain percentages. The owner obtained such a special exception for the second section. When the zoning text amendment was adopted, the owner had expended $118,542.20 for surveys, soil tests, architectural designs and engineering work on the third section for which 442 bedrooms were proposed. The text amendment reduced that number to 367 without a special exception. The special exception was denied and the owner contended that its investment gave it a vested

right to a permit for an apartment building containing 442 bedrooms. In sustaining the validity and effectiveness of the text amendment as it applied to the third section, we cited with approval and followed *Richmond, supra.* See *Ross, supra; Mandel v. Board of County Commissioners,* 238 Md. 208, 208 A. 2d 710 (1965) ; and, *Shapiro* and *Snyder,* both *supra.* We also quoted with approval from 2 Rathkopf, *The Law of Zoning and Planning* (3rd ed.) Ch. 57, § 1, at 57-2 to 57-4, as follows:

> "It is generally held that neither the filing of an application for a building permit nor the issuance of a building permit, although valid and issued in conformity with the provisions of the zoning ordinance, alone confers any rights in the applicant or permittee as against a change in the zoning ordinance which imposes further limitations upon the use or structure proposed. As a matter of dicta, some courts have stated that the amendment of the ordinance constitutes, ipso facto, a revocation of any permit for a use or structure prohibited by the amendment.
>
> "Where the landowner has done nothing subsequent to obtaining the permit, he is usually held to be bound by any change in the zoning ordinance even if its effect is to nullify the permit."

(260 Md. at 309, 272 A. 2d at 15.)

In the instant case, although the special exception was granted as required by our mandate in *Rockville Fuel v. Board of Appeals, supra,* no permit was ever obtained by Rockville Fuel and, of course, no construction was begun. The authorities cited clearly indicate that Rockville Fuel had obtained no "vested right" to construct and operate a concrete batching plant on its Gaithersburg land.

Rockville Fuel seeks to distinguish the prior Maryland cases already mentioned on the ground that its right to have the special exception granted had been de-

termined by this Court and this determination gave it a "vested right" to construct and operate the proposed concrete batching plant. This contention is, in our opinion, without merit. Our prior decision determined that the Board of Appeals should grant the special exception with appropriate conditions under the law then existing and this the Board of Appeals did as required by the mandate. No "vested right" was conferred upon Rockville Fuel by this action. Such a "vested right" could only result when a lawful permit was obtained and the owner, in good faith, has proceeded with such construction under it as will advise the public that the owner has made a substantial beginning to construct the building and commit the use of the land to the permission granted.

This Court has consistently held that "a zoning case must be decided upon the law applicable at the time the case is before us, in the absence of intervening vested rights." *DalMaso v. Board of County Commissioners for Prince George's County*, 264 Md. 691, 694, 288 A. 2d 119, 121 (1972) and prior cases therein cited. The basic question in the present case is, therefore, the second question, *i.e.*, is the text amendment to the Gaithersburg zoning ordinance unconstitutional as it applies to Rockville Fuel? We now turn to that question.

### (2)

Rockville Fuel does not contend in the present case that the zoning amendment prevents it from using its land for all lawful and proper uses permitted in the I-2 zone and hence would amount to a taking of its land for public use without the payment of just compensation as prohibited by Art. III, Sec. 40A of the Maryland Constitution. Indeed, James D. Ward, Secretary-Treasurer of Rockville Fuel, stated on cross-examination that "* * * it would be entirely possible for some other owner to use it [the subject property] for another purpose other than a concrete batching plant."

The question then is whether or not the amendatory zoning ordinance is unconstitutional as being arbitrary,

unreasonable, capricious or discriminatory and thus a violation of the provisions of Art. 23 of the Declaration of Rights of the Maryland Constitution prohibiting a denial of due process of law and of the provisions of the Fourteenth Amendment of the United States Constitution. As Judge Levine aptly stated:

"In mounting its two-pronged attack on the constitutionality of the ordinance amendment, Rockville Fuel argues earnestly that Gaithersburg's action was taken solely for the purpose of thwarting Plaintiff's construction of the concrete mixing plant. Hence, it says, the ordinance was 'a special law for a special case', and not general legislation for the protection and benefit of the public. In support of this contention, it points with considerable force to the following facts: that immediately following the Court of Appeals decision, the City Attorney suggested the amendment as an antidote; the timing and sequence of the various actions then taken by Gaithersburg's official bodies in furtherance of the amendment; and the fact that while the amendment eliminates concrete mixing plants, a number of uses which are at least as obnoxious were retained in the zoning ordinance.

"The case on which it places great reliance for this argument is *North West Merchants Terminal, Inc. v. O'Rourke*, 191 Md. 171, 60 A. 2d 743 (1948). There, the Baltimore City property in question had been in a commercial use district since the original zoning ordinance of 1931. In the immediate vicinity was a large area of residential classification. In 1945, the appellant purchased property in the commercial district for expansion of its storage facilities which it required for its building materials manufacturing business, and because of the property's access to a railroad siding. After obtaining an occupancy permit, it cleared and

filled the property and otherwise prepared it for use at a cost of $50,000 which included the purchase price. By 1946, the preparations were completed and the property was being used.

"In October 1945, an amendment to the ordinance was proposed which changed the property from the 'second commercial use district' to the 'residential use district'. While this amendment was under consideration, the appellant filed three applications for building permits. This incurred considerable neighborhood opposition but the permits were issued. In April 1946, after undergoing a tortuous journey through the various public agencies, the ordinance was approved. A group of nearby property owners sued for injunction and a declaration that the three building permits were void. On appeal from a decree enjoining the appellant from erecting the three warehouse buildings and from using the property for any use not permitted by the ordinance amendment, the appellant contended, *inter alia,* that the amendment was unconstitutional as applied to it in depriving it of property without due process and in denying it equal protection of the law.

"The Court of Appeals reversed the decree, holding the ordinance amendment was invalid as applied to the appellant for being unreasonable, arbitrary and contrary to the section of the Zoning Enabling Act (Acts of 1927, Chapter 705, Article 66 B, Section 3) which required zoning regulations to 'be made in accordance with a comprehensive plan and . . . with reasonable consideration, among other things, to the character of the district and its suitability for particular uses . . . .'

"We believe the Plaintiff has placed a gloss on *O'Rourke* which we are unable to accept. At the outset, it should be noted that the facts in

*O'Rourke* are distinguishable from the case at bar in that *O'Rourke* is concerned with a change from one entire zoning classification to another (commercial to residential) after the commercial use had been established. Here, we deal with the elimination of one particular use (not yet established) from among many permitted in the heavy industrial classification. Furthermore, it is clear that the sole basis for the amendment was a 'plebescite [*sic*] of neighbors' without any supporting evidence that related to the public health, comfort, safety or welfare. There is also a strong suggestion from the cases cited with approval in the opinion, including *Vine v. Zabriskie*, 122 N.J.L. 4, 6, 3 A. 2d 886, 887 (1939), also quoted extensively in Plaintiff's memorandum, that the effect of the amendment was to restrict the owner from using the property for any reasonable purpose. A similar contention has not been advanced by the Plaintiff, nor is there any evidence to support it. *Mandel, supra,* at 217.

"The argument that through its action nullifying the special exception by the amendment, Gaithersburg violated Plaintiff's constitutional rights of due process and equal protection is not dissimilar from the contention asserted in *Eutaw Enterprises, Inc. v. Mayor and City Council of Baltimore*, 241 Md. 686, 217 A. 2d 348 (1966) which, although it was concerned with an existing use, is apposite to the case at bar. There, an ordinance was adopted which eliminated check-cashing businesses from 'residential and office use districts,' but allowing existing businesses 18 months in which to cease operating. In disposing of the equal protection argument, the Court found controlling the case of *Grant v. Mayor and City Council of Baltimore*, 212 Md. 301, 129 A. 2d 363 (1957), a landmark

case in the area of non-conforming uses. It quoted *Grant* with approval:

" 'If it does not clearly appear that this legislative finding [that billboards in residential areas so seriously incommoded the health, comfort and general welfare that the benefit to the public good brought about by their removal from such areas substantially outweighed the resulting harm to individuals] *was unreasonable and arbitrary—almost demonstrably wrong* from the record —the courts may not disturb it.'

(emphasis supplied) 241 Md. at 694.

"The Court stated that the City Council could reasonably and properly have believed check-cashing businesses to be inconsistent and incompatible with uses customary in a residential and office use district, and ultimately have determined that check-cashing uses were detrimental to the public health, comfort and welfare.

"The transcript of the public hearing held by the Gaithersburg Planning Commission on the proposed amendment includes the testimony of the City Planning Director. He testified that a new comprehensive zoning ordinance was expected imminently which had among its goals the elimination of heavy industrial uses from the 'historic heart of the City,' in order to preserve it as an area of residential and commercial uses. He testified that to this end, the anticipated ordinance would eliminate a number of heavy industrial uses so as to conform it to the plan which had already been adopted. Quite obviously, concrete mixing plants was one of the uses which was to be eliminated by the forthcoming ordinance. This testimony, in effect, adopted the analysis which the Planning Staff

had made in recommending approval of the amendment.

"The Planning Commission registered its approval of the amendment which it forwarded to the Mayor and Council. In doing so, it affirmed the views presented to it and indicated its concern with the effect that concrete mixing plants might have on the environment. The views of the Planning Commission were presented to the Mayor and Council as were those of the Plaintiff, following which the amendment received final approval.

"Clearly these facts are sufficient to bring this case within the ambit of the test enunciated in *Grant* and followed in *Eutaw*, in that 'the City Council could have found that [cement mixing plants] in residential [and commercial] areas so seriously incommoded the health, comfort and general welfare that the benefit to the public good brought about by their removal from such areas substantially outweighed the resulting harm to individuals. . . . If it does not clearly appear that this legislative finding was unreasonable and arbitrary—almost demonstrably wrong from the record—the courts may not disturb it.' 241 Md. at 694.

"It is important to note, as we stressed in disposing of the vested rights issue, that in the case at bar, unlike the non-conforming use cases which include *Eutaw* and *Grant*, we are not concerned with an existing use. This distinction merely attenuates the Plaintiff's contention. The Court of Appeals noted the distinction in *Eutaw* with the following statement:

" 'The distinction between an ordinance that restricts future uses and one that requires existing uses to stop after a reasonable time, is not a difference in kind but one of degree and, in each case, constitutional-

ity depends on overall reasonableness, on the importance of the public gain in relation to the private loss.' 241 Md. at 695.

"*Eutaw* also appears dispositive of Plaintiff's reliance on the argument that since it had the only proposal pending in the City for a concrete mixing plant, the amendment was aimed solely at it, and thus constituted special legislation.

" 'The holdings of *Grant* control this case. The ordinances here complained of were constitutional exercises of legislative power. Ordinance 465, when it validly excluded check cashing operations from residential zones from the date of its enactment, necessarily made such operations then already in existence in such zone nonconforming uses. *The fact*, if it is a fact, *that Eutaw was the only commercial check casher in a residential district when the ordinances were enacted and that the City Council knew this, would not make them invalid as to Eutaw*. It had no vested right in the zoning classification under which it operated and no right to expect that the classification of the property in which it operated would remain unchanged indefinitely. The ordinances, passed after deliberation and full consideration of expert and professional advice were general in application and drawn to apply in the same way, presently and in the future, to all similarly situated.' (emphasis supplied) 241 Md. at 696.

"The Plaintiff has not established that the zoning text amendment is unconstitutional as applied to it."

### (3)

Finally, Rockville Fuel contends that the City of Gaithersburg is estopped to take any action to deny it

the right to construct and operate a concrete batching plant. We do not agree with this contention.

We adopt, as the opinion of the Court, Judge Levine's opinion on this point, as follows:

"It [Rockville Fuel] urges that by its provision for concrete batching plants as a permitted use in the zoning ordinance, subject to a special exception, Gaithersburg induced it to purchase the subject property; that, in continued reliance thereon, Rockville Fuel prosecuted its special-exception application and the resulting appeals at the expense of 'considerable time and money'. In effect, the argument is that under those circumstances, Gaithersburg's action came too late to be applied to Rockville Fuel.

"That the doctrine of estoppel may be applied to municipal corporations is well settled in this State. *Mayor and City Council of Baltimore v. Chesapeake Marine Ry. Co.*, 233 Md. 559, 197 A. 2d 821 (1964).

"However, no authority has been brought to our attention, nor have we been able to find any, which holds that a municipal corporation may be estopped from amending an ordinance on the basis that someone previously purchased property in reliance upon the ordinance. Public policy considerations alone would appear to constitute an overwhelming answer to that contention. Furthermore, there is not the slightest suggestion offered by the Plaintiff that Gaithersburg was on notice that the property was being purchased with the intended purpose of applying for a special exception. Nor is there any evidence showing that the Plaintiff was induced by any conduct on the Defendant's part. Normally, mere silence, standing alone, does not create an estoppel where there is no duty to speak. *Savonis v. Burke*, 241 Md. 316, 216 A.

2d 521 (1966) ; and, in any event, the silent party must have knowledge of the facts. *Mason v. Dulaney,* 144 Md. 108, 124 A. 390 (1923).

"Finally, there is no evidence that Rockville Fuel, in acquiring the land and being unable to seek a special exception, has suffered injury, since the testimony did not disclose the present worth as compared to its purchase price. *Savonis v. Burke, supra.*

"Even if we consider the estoppel claim merely within the narrow framework of the Plaintiff's efforts to secure the special exception in reliance upon the conduct of Gaithersburg, as distinguished from the purchase of the real estate, we remain confined to the proposition that the inducement consisted of mere silence on the Defendant's part. In sum, the doctrine of estoppel would appear applicable to this case only if we had first reached the conclusion that the Plaintiff had a vested right in retaining concrete batching plants as a special-exception use under the zoning ordinance, a contention which we have already examined and rejected. *Board of County Commissioners of Anne Arundel County v. Maurice Snyder, supra.*"

See also *City of Hagerstown v. Long Meadow Shopping Center,* 264 Md. 481, 495-96, 287 A. 2d 242, 249-50 (1972), in which Judge Finan, for the Court, reviewed our prior cases and a number of opinions of the highest courts of other states on the subject of estoppel of municipal corporations, citing *Baltimore v. Shapiro,* 187 Md. 623, 634, 51 A. 2d 273 (1947), with approval, and quoting from McQuillin, *Municipal Corporations,* Vol. 8, § 25.153, at 489 (1965 Rev. Vol.). See also *Harris Used Car v. Anne Arundel County,* 257 Md. 412, 418-19, 263 A. 2d 520, 523-24 (1970).

> *Order of December 22, 1971, affirmed, the appellant to pay the costs.*