PRINCE GEORGE'S COUNTY, MARYLAND *v.* McBRIDE

[No. 203, September Term, 1972.]

*Decided April 4, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH and LEVINE, JJ.

*Ellis J. Koch* and *Harry L. Durity, Associate County Attorneys,* with whom was *Walter H. Maloney, Jr., County Attorney,* on the brief, for appellant.

*Joseph F. McBride,* with whom were *Robert S. Hoyert, Robert A. Diemer, Bill L. Yoho, Roy W. Hooten* and *Hoyert, Diemer, Yoho, Hooten & McBride* on the brief, for appellee.

*Amicus Curiae* brief filed by City of Bowie, *Joseph S. Casula* on the brief for City of Bowie and by Prince George's County Municipal Association, *Robert W. Shook* on the brief for the Association.

LEVINE, J., delivered the opinion of the Court.

At first glance, one might view this appeal as one taken from the mere denial of a rezoning application, and thus expect it to be decided somewhat routinely in accordance with the abundant collection of zoning cases that now repose in the Maryland Reports. Indeed, but for the enactment of Chapter 278, Laws of Maryland, 1969, we might well have been concerned in this case merely with the commonplace zoning question of whether the evidence of "change" was fairly debatable. As it happens, what began as a "garden variety" zoning case has blossomed into one presenting significant issues of statutory construction and constitutional law. The Circuit Court for Prince George's County (Loveless, J.) decided the case on one of these issues, the effect of which was to declare Chapter 278 unconstitutional. From that ruling, this appeal is taken.

On January 31, 1969, appellee (McBride) filed an application with appellant (the District Council) for the reclassification of a parcel containing approximately 11,252 square feet located in the City of Bowie (Bowie),

from the C-1 (local commercial) to the I-1 (light industrial) zone. On April 9, 1969, the District Council, pursuant to § 59-83 (c)[1] of the Code of Public Local Laws of Prince George's County, referred the application to Bowie for its recommendation.[2] Section 59-83 (c) had been amended by Chapter 417, Laws of 1966, to "[allow] such governing body . . . sixty (60) days in which to make its recommendation."

On July 1, 1969, while the matter was presumably still under consideration by Bowie, Chapter 278 became effective. It added to § 59-83 (c) the proviso "that . . . a two-thirds majority of all the members of the district council shall be required before said council may change the zoning classification of property within any incorporated municipality contrary to the recommendation of such municipality thereon."

On September 2, 1970, some 17 months after the application had been referred to it, Bowie forwarded its recommendation that the rezoning be denied. The matter came on for hearing on October 9, 1970 before the District Council which, on November 2, 1970, issued its decision. By a 3-to-2 vote, that body determined that there had been a "substantial change in the neighborhood" and, for a number of reasons detailed in its decision, concluded that the subject property should be rezoned, but to the C-2 (general commercial) zone and

---

1. Prior to enactment of Chapter 711, Laws of 1969, this subsection was designated as (d) rather than (c). To avoid needless confusion, we refer to it as (c) without regard to the applicable time period.

2. "(c) *Referral to incorporated municipalities.* Before the district council of the Maryland-Washington Regional District in Montgomery County and Prince George's County may amend the zoning ordinance of either county by changing the zoning classification of property within any incorporated municipality, the application for such change shall be referred to the governing body of such incorporated municipality for its recommendation, allowing such governing body if it be within the confines of Prince George's County sixty (60) days in which to make its recommendation; provided, that . . . a two-thirds majority of all the members of the district council shall be required before said council may change the zoning classification of property within any incorporated municipality contrary to the recommendation of such municipality thereon. . . ."

not to I-1. Deeming itself bound by the augmented majority proviso in Chapter 278, however, the District Council denied the application for "want of a two-thirds majority vote."

McBride appealed the District Council's decision to the circuit court where he mounted an attack on several grounds. As we noted earlier, Judge Loveless found it necessary to reach only one of those issues, concluding, in effect, that Chapter 278 is an unconstitutional delegation of the zoning power to municipalities due to the lack of proper standards. Being of that view, he "determined that the simple majority vote of the Council was all that was required," and therefore ordered that the zoning application "be granted by the District Council."

In addition to challenging the circuit court's decision, appellant also seeks to have us decide the remaining issues which were not reached below. It is joined in this request by McBride. Our study of the record persuades us that we should reach the additional questions posed by the parties, even though they were not reached below, to "avoid the expense and delay" of what is certain to be at least one more "appeal to this Court," Rule 885.[3]

The additional issues presented to us, which have been briefed and argued, are:

Whether McBride has been denied equal protection of the law?

Whether Bowie was required to make its recommendation within sixty days?

Whether Bowie was estopped from making its recommendation?

---

3. It is evident to us that the suggestion of additional appeals should not be dismissed lightly, since even this appeal is merely a sequel to Prince George's Co. v. McBride, 263 Md. 235, 282 A. 2d 486 (1971), where we decided that the augmented majority proviso in Chapter 278 applied to Prince George's County as well as Montgomery County.

(1)

We have noted that the circuit court struck down Chapter 278 as unconstitutional for the reason that it delegates zoning power to municipalities without providing necessary standards. In support of that ruling, McBride reminds us of our decision in *Prince George's Co. v. Laurel*, 262 Md. 171, 179, 277 A. 2d 262 (1971), where we noted that by virtue of its exclusion from the Regional District, "the Town of Laurel is the only one of the twenty-nine incorporated municipalities in Prince George's County which was granted and now exercises planning and zoning powers." On this basis, he argues, the standards or guidelines that might otherwise be available to a municipality such as Bowie under Maryland Code (1957, 1970 Repl. Vol.) Art. 66B, § 4.01 *et seq.*, in effectuation of the zoning power, do not apply.

And, it is maintained, since Chapter 278 itself failed to provide such standards, the District Council acted contrary to our decisions requiring a delegation of the zoning power to be accompanied by proper standards or guidelines, *Marek v. Board of Appeals*, 218 Md. 351, 146 A. 2d 875 (1958); *Heath v. Mayor and City Council of Baltimore*, 187 Md. 296, 190 Md. 478, 49 A. 2d 799, 58 A. 2d 896 (1946); *Tighe v. Osborne*, 149 Md. 349, 131 A. 801, 43 A.L.R. 819 (1925); see *Gino's v. Baltimore City*, 250 Md. 621, 244 A. 2d 218 (1968).

In the view we take of this question, it becomes unnecessary to decide whether Chapter 278 is unconstitutional due to a lack of standards or guidelines, for we do not agree that the proviso under attack here has the effect of delegating zoning power to municipalities.

While we have never had occasion to decide the issue presented by the trial court's ruling, the "augmented majority" provision is not entirely new to the zoning law of Maryland. Indeed, while, as we noted in the first *McBride* case, Chapter 278 introduced the concept to Prince George's County, the very same provision has been in effect for Montgomery County ever since the

passage of Chapter 780, Laws of 1959, known as the "Regional District Act." A variation is also found in Code (1957, 1970 Repl. Vol.) Art. 66B, § 3.08 which, in substance, provides that decisions of planning commissions conforming with an adopted land-use plan may be overruled only by a two-thirds vote of a local legislative body.

In this connection, it is reasonable to suggest that if there is any validity to McBride's contention that Chapter 278 is an improper delegation of zoning power, the argument applies with greater force where a planning commission is cast in the role occupied here by Bowie, since zoning is clearly a legislative function, *Scull v. Coleman,* 251 Md. 6, 246 A. 2d 223 (1968); *Ark Readi-Mix v. Smith,* 251 Md. 1, 246 A. 2d 220 (1968); *Reese v. Mandel,* 224 Md. 121, 167 A. 2d 111 (1961), that is committed to local legislative bodies and municipalities, and not to planning commissions.

An analogous provision was presented in *Gratton v. Conte,* 364 Pa. 578, 73 A. 2d 381 (1950). There, a statute provided that recommendations of the city planning commission against proposed changes in zoning regulations or districts could be overridden only by a three-fourths vote of the city council. While the issue was not whether that provision constituted a delegation of zoning power, what the court there said is persuasive:

> ". . . [T]he Commission is, as far as zoning is concerned, merely a recommendatory body; final decision rests in the elective legislative body of the city government. . . . [T]he Act of 1927 provided that in case of disapproval by that body of a proposed change in zoning regulations or boundaries a vote of three-fourths of all the members of the Council should be required to pass the ordinance; once such a vote is obtained, however, the requirements of the law are fulfilled. The ultimate power is vested in the Council, and its good faith in acting for the public

welfare cannot be questioned by the judicial branch of government." 73 A. 2d at 384.

In *Hopkins v. MacCulloch,* 35 Cal. App. 2d 442, 95 P. 2d 950 (1939), where a similar provision applicable to a planning commission was involved, the court held, in effect, that there was no delegation of the zoning power. In so holding, the court cited with approval an earlier California case, *City of Stockton v. Frisbie & Latta,* 93 Cal. App. 277, 270 P. 270 (1928), where a similar conclusion was reached in connection with a zoning ordinance that required a greater than majority vote for the adoption of classification changes where there were protests by a stated percentage of property owners within a specified distance of the area sought to be rezoned. Similar provisions are found in a number of enabling acts and zoning ordinances throughout the country and, where challenged as unlawful delegations of legislative power, have uniformly been upheld as not constituting such a delegation, *Bredberg v. City of Wheaton,* 24 Ill. 2d 612, 182 N.E.2d 742 (1962); *Koppel v. City of Fairway,* 189 Kan. 710, 371 P. 2d 113 (1962); *Trumper v. City of Quincy,* 264 N.E.2d 689 (Mass. 1970); *Northwood Properties Co. v. Perkins,* 325 Mich. 419, 39 N.W.2d 25 (1949); *Farmer v. Meeker,* 63 N. J. Super. 56, 163 A. 2d 729 (1960).

In 1 RATHKOPF, THE LAW OF ZONING AND PLANNING, 28-5 (3rd ed. 1962), it is aptly stated:

> "The purpose of a provision requiring a greater than ordinary vote for a change in a zoning classification upon the filing of protests, is to confer a measure of added protection against unwanted or ill-considered change upon those property owners who would be most affected by it."

We see as much validity for protection of a municipality that otherwise lacks the means for guiding or controlling development within its boundaries. The furtherance of

that objective by the requirement of a special majority, does not alone constitute a delegation of the zoning power.

We think that the rationale of the Pennsylvania and California cases applies here. Surely, prior to the enactment of Chapter 278 when, as in any other case, only a "normal" majority vote was required to grant a zoning application, it would have been conceded that the municipality to which an application had been referred, pursuant to § 59-83 (c), was merely a "recommendatory body." And we do not see how that is changed merely by requiring a "special" majority.

That requiring a two-thirds vote of the District Council to grant a zoning application over a contrary recommendation by a municipality does not confer a veto power is illustrated by the various results that are possible in the interaction between municipalities and the District Council under Chapter 278. First, what is required is a two-thirds majority, not unanimity; thus, it is still possible for the District Council to control the outcome of *all* zoning cases. Secondly, if the municipality recommends approval of the application, the District Council may grant or deny by a normal majority vote.

In sum, since we do not agree that Chapter 278 is a delegation of the zoning power, we conclude that the circuit court erred in declaring it unconstitutional for lack of necessary standards or guidelines.

### (2)

In asserting that Chapter 278 is violative of the Equal Protection Clause, McBride argues that it makes a constitutionally impermissible distinction between property owners "within the municipality as opposed to those without." This contention calls to mind the statement of Judge Hammond, for the Court, in *Allied American Co. v. Comm'r*, 219 Md. 607, 623, 150 A. 2d 421, 431 (1959):

"Except where discrimination on the basis of race or nationality is shown, few police power

regulations have been found unconstitutional on the ground of denial of equal protection, which may be what prompted the Supreme Court to call the equal protection clause the 'usual last resort of constitutional arguments.' " (citing *Buck v. Bell*, 274 U. S. 200, 208, 71 L. Ed. 1000).

The short answer to McBride's argument is found in *Potomac Sand & Gravel v. Governor*, 266 Md. 358, 293 A. 2d 241 (1972), where we quoted from *McGowan v. Maryland*, 366 U. S. 420, 81 S. Ct. 1101, 6 L.Ed.2d 393 (1961) in reiterating that:

> " '[T]he Equal Protection Clause relates to equality between persons as such, rather than between areas, and . . . territorial uniformity is not a constitutional prerequisite.' " 266 Md. at 377.

Compliance with the Equal Protection Clause requires that legislative classification rest upon some ground of difference having a fair and substantial relation to the object of the legislation. *Administrator, Motor Vehicle Administration v. Vogt*, 267 Md. 660, 299 A. 2d 1 (1973) ; *Police Comm'r v. Siegel Enterprises, Inc.*, 223 Md. 110, 162 A. 2d 727 (1960) ; *Tatlebaum v. Pantex Mfg. Corp.*, 204 Md. 360, 104 A. 2d 813 (1954) ; *see Rebe v. State's Attorney*, 262 Md. 350, 277 A. 2d 616 (1971). That objective is met by Chapter 278. In distinguishing between those zoning applications that are filed within municipalities from those filed without, the legislature could have considered that zoning control is the cornerstone of effective city planning, and, as we have already observed, that all but one of the municipalities in Prince George's County are without the power to zone. Lacking a safeguard such as that prescribed by Chapter 278, those municipalities could be without effective means for controlling development within their borders; and uncontrolled development might well, in the judgment of the legislature, have a significant impact upon other legitimate municipal concerns such as services and taxes.

A cardinal rule to be observed where a violation of the Equal Protection Clause is claimed is that one who assails a legislative classification must sustain the burden of proving that it does not rest on any reasonable basis, *Administrator, Motor Vehicle Administration v. Vogt; Allied American Co. v. Comm'r,* both *supra.* That burden has not been met here, and we therefore hold that Chapter 278 is not violative of the Equal Protection Clause.

### (3)

We pass now to McBride's contention that the recommendation of denial by Bowie was invalid because it was not made within sixty days of the date on which the application had been referred for that purpose. The parties are in agreement that the determination of that issue turns on the question whether the time provision in § 59-83 (c) is directory or mandatory. The particular phrase to be interpreted is:

> ". . . Allowing such governing body . . . sixty (60) days in which to make its recommendation; . . . ."

McBride argues that the "sixty (60) days" is a mandatory limitation; hence, he says, any recommendation made after the expiration of sixty days was a nullity. The District Council, on the other hand, contends that the time provision is directory, and that it means municipalities are intended to have no less than sixty days in which to make their recommendations, but that even those received thereafter are valid if they have preceded action by the District Council. We think that the District Council has the better of the argument, and that the disputed language is directory rather than mandatory.

More than a century ago, in *State v. County Comm'rs Balto. County,* 29 Md. 516, 522 (1868), our predecessors enunciated the rule that:

> "[W]here the duty prescribed is of a public nature, and intended for the public benefit, and

is directed to be performed within a specified time, courts have adopted as a general rule in the construction of Statutes, that they are, in respect to the time, to be regarded *as directory* merely, unless, from the nature of the act to be performed, or the language employed in the Statute, it plainly appears that the designation of time was intended as a limitation of power of the officer." (emphasis in original)

This principle continues to reflect the overwhelming weight of authority elsewhere. 2 SUTHERLAND, STATUTORY CONSTRUCTION, § 2804 n.2 (4th ed. 1943, Supp. 1972) ; 3 *id* § 5816 n.2. That the reference of zoning applications to municipalities under § 59-83(c) is a "duty . . . of a public nature, and intended for the public benefit" cannot be seriously questioned.

This Court has also said:

"Whether a particular provision of a statute is to be held mandatory or directory, does not necessarily depend merely or exclusively upon the language in which it is declared, but in large measure upon the character and purpose of the provision, and the legislative intent, to be deduced from a proper consideration of the means provided for its certain operation, and of the consequences which would follow from one or the other construction. Positive commands and positive prohibitions have alike been held directory." *State v. McNay*, 100 Md. 622, 632, 60 A. 273 (1905).

*Young v. Lynch*, 194 Md. 68, 69 A. 2d 787 (1949) and *Bond v. Baltimore*, 118 Md. 159, 84 A. 258 (1912) are to the same effect. While the language of the statute may not be controlling, we note the complete absence of any language in the statute here that might customarily be identified with a mandatory requirement, such as the word "shall."

Analysis of the "character and purpose" of the "sixty-day provision" removes any possible doubt of its directory nature. It should be recalled that the requirement of a reference to municipalities has existed since the adoption of the Regional District Act as Chapter 780, Acts of 1959; and that, as we noted at the outset, the phrase now under consideration appeared as an amendment by Chapter 417, Laws of 1966. That its insertion was merely intended to insure that the city would have at least sixty days in which to make the recommendation previously provided for is clear. We find nothing in the reference procedure to suggest that a response within sixty days is essential to the purpose of the statute. 3 SUTHERLAND, *supra*, § 5816. In sum, having concluded that the "Sixty-day provision" is directory, we think Bowie's response was not rendered invalid by the prior lapse of that time period.

### (4)

Lastly, we consider the contention that Bowie was estopped from submitting its recommendation. The essence of this argument is that the application was referred on April 9, 1969, and Chapter 278 did not become effective until July 1; hence, it is maintained, Bowie should not have been permitted to wait until the effective date, twenty-two days after the sixty-day period had expired, before making its recommendation, and, by doing so, to invoke the "augmented majority" proviso.

Quite apart from the applicable principles of estoppel, which afford no support for this argument, there is an obviously-fatal defect in its reasoning. In short, there is nothing in the record to demonstrate that even if Bowie had responded within sixty days, the District Council would have held its hearing on the zoning application within the ensuing twenty-two days, or before the effective date of Chapter 278.

As we have intimated, McBride is not helped by the principles of estoppel. While the doctrine of estoppel may

in some instances be applied to municipalities, *Rockville Fuel v. Gaithersburg,* 266 Md. 117, 134, 291 A. 2d 672 (1972) ; *M. & C. C. v. Chesapeake,* 233 Md. 559, 197 A. 2d 821 (1964), it does not apply here for the simple reason that there is no showing of reliance or change of position on the part of McBride, *Rockville Fuel v. Gaithersburg, supra; Savonis v. Burke,* 241 Md. 316, 216 A. 2d 521 (1966).

In sum, we find no merit in the contentions made by McBride here and below. Therefore, since Chapter 278 is constitutional and was validly applied in this case, the action of the District Council in denying the zoning application should have been upheld by the circuit court.

> *Order reversed; remanded for passage of an order in conformity with this opinion; appellee to pay costs.*