The MAYOR AND COUNCIL OF NEW CASTLE, a Municipal Corporation of the State of Delaware, Plaintiff,

v.

ROLLINS OUTDOOR ADVERTISING, INC., Defendant.

Court of Chancery of Delaware, New Castle County.

Submitted: Sept. 10, 1982.

Decided: Feb. 10, 1983.

Daniel F. Wolcott, Jr., and W. Laird Stabler, III, of Potter, Anderson & Corroon, Wilmington, for plaintiff.

Harvey B. Rubenstein, and Michael A. Poppiti, Wilmington, for defendant.

BROWN, Chancellor.

This is an action brought to enforce a zoning regulation. Defendant has moved to dismiss. The issue presented calls into question the legality of a zoning ordinance which seeks to eliminate certain nonconforming uses through a gradual amortization of the value of the use. The question would appear to be one of first impression in this State.

The zoning ordinance involved was adopted by the plaintiff City of New Castle as a part of a 1968 reenactment of the zoning code of the City. It reads in relevant part as follows:

"6. *Gradual Elimination of Certain Uses—*

Certain non-conformities shall be terminated in accordance with the following provisions:

\*   \*   \*   \*   \*   \*

"b. Within not more than three years from the date of adoption or amendment of this ordinance by which a use becomes non-conforming, the right to maintain the following non-conformities shall terminate and such non-conformities shall no longer be operated or maintained:

(1) Any junk yard

(2) A non-conformity, which is not enclosed within a structure

(3) Off-site signs."

This case deals with the third category—off-site signs. Specifically, the defendant Rollins Outdoor Advertising, Inc. presently owns two parcels of real estate within the City of New Castle on which advertising billboards are situated. These properties are classified for residential use under the City zoning code. However, they are used solely for off-site advertising purposes by Rollins. No other business or activity is conducted on the premises.

These billboards were in place on the properties and were being used for off-site advertising purposes by Rollins', predecessor in title at the time that a comprehensive zoning code was first adopted by the City of New Castle. The initial zoning classifica-

tion of the two properties did not permit such a use. Neither does the 1968 reenactment. Accordingly, since the actual use predated the zoning classification, the continued existence of the billboards has been permitted heretofore under the concept of a nonconforming use. As with all nonconforming uses, the theory is that eventually the proscribed use will be terminated or abandoned with the passage of time, after which the property will then be made to comply with the zoning classification.

As to certain uses, however, the passage of time has not produced the curative effect hoped for by the zoning planners. Junk yards and billboards fall within this category. A junk yard, by its very nature, has a tendency to never go away. To perhaps a lesser degree the same is true of billboards. Thus, in recent years, a new approach has been conceived to hasten their respective departures so as to terminate the objectionable use and bring the property into compliance with the overall zoning scheme. This new concept allegedly involves the principle of amortization. This is said to be the basis and justification for the zoning ordinance in issue here insofar as it applies to the off-site signs of the defendant Rollins.

Stated in its simplest terms, the amortization of a nonconforming use contemplates the compulsory termination of a nonconformity at the expiration of a specified period of time—the time period, in theory, being equal to the useful economic life of the nonconformity. The basic idea is to determine the remaining normal useful life of a pre-existing nonconforming use. The landowner is then allowed to continue his use for this period so as to realize (or perhaps recoup) the value of the use. Presumably, this is measured against his capital investment in the use. At the end of the specified period he must terminate the use and conform his property to its classification under the zoning plan. See, *Hoffman v. Kinealy,* Mo.Supr., 389 S.W.2d 745, 750 (1965).

The parties concede that there is a distinct split of authority throughout the country on the question of the constitutionality of this amortization approach to the elimination of nonconforming uses. On the one hand, the number of cases holding the amortization method of eliminating nonconforming uses or structures to be constitutional is substantial. *National Advertising Company v. County of Monterey,* Cal.App., 211 Cal.App.2d 375, 27 Cal.Rptr. 136 (1963); *Village of Gurnee v. Miller,* Ill.App., 69 Ill.App.2d 248, 215 N.E.2d 829 (1966); *John Donnelly & Sons, Inc. v. Outdoor Advertising Bd.,* Mass.Supr., 369 Mass. 206, 339 N.E.2d 709 (1975); *Harris v. Mayor and City Council of Baltimore,* Md.Spec.App., 35 Md.App. 572, 371 A.2d 706 (1977); *Eutaw Enterprises, Inc. v. City of Baltimore,* Md. App., 241 Md. 686, 217 A.2d 348 (1966); *Grant v. Mayor and City Council of Baltimore,* Md.App., 212 Md. 301, 129 A.2d 363 (1957); *Inhabitants, Town of Boothbay v. National Adv. Co.,* Me.Supr., 347 A.2d 419 (1975); *Naegele Outdoor Adv. Co. v. Village of Minnetonka,* Minn.Supr., 281 Minn. 492, 162 N.W.2d 206 (1968); *Lachapelle v. Town of Goffstown,* N.H.Supr., 107 N.H. 485, 225 A.2d 624 (1967); *Suffolk Outdoor Advertising Co. v. Hulse,* N.Y.App., 43 N.Y.2d 483, 402 N.Y.S.2d 368, 373 N.E.2d 263 (1977); *Harbison v. City of Buffalo,* N.Y.App., 4 N.Y.2d 553, 176 N.Y.S.2d 598, 152 N.E.2d 42 (1958); *Beals v. County of Douglas,* Nev. Supr., 93 Nev. 156, 560 P.2d 1373 (1977); *State v. Joyner,* N.C.Supr., 286 N.C. 366, 211 S.E.2d 320 (1975); *City of Seattle v. Martin,* Wash.Supr., 54 Wash.2d 541, 342 P.2d 602 (1959); *Art Neon Co. v. City and County of Denver,* 488 F.2d 118 (10th Cir. 1973); *Standard Oil Co. v. City of Tallahassee,* 183 F.2d 410 (5th Cir.1950), *cert. den'd* 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 647 (1950). In the main, these decisions stand for the proposition that the forced termination of a nonconforming use over a specified period of time is a reasonable exercise of the police power and does not constitute a taking of property in violation of due process.

On the other side of the matter, Rollins cites *City of Fayetteville v. S & H, Inc.,*

Ark.Supr., 261 Ark. 148, 547 S.W.2d 94 (1977); *Hoffman v. Kinealy, supra; Concord Township v. Cornogg,* Pa.C.P., 9 D & C.2d 79 (1956); and *City of Akron v. Chapman,* Ohio Supr., 160 Ohio St. 382, 116 N.E.2d 697 (1953), all of which have held that such an amortization ordinance does amount to an improper taking of private property without just compensation.

As applied to off-site signs the rationale offered by the authorities cited by the City of New Castle is that such an ordinance is a reasonable exercise of the police power in that it is related to the general welfare of the community. It is said to be reasonably designed to gradually remove an unwanted, unsightly and value-depreciating commercial intrusion from an otherwise residential area. It is said that the owner of the property having the nonconfirming use is compensated for the eventual termination by virtue of being granted, in effect, a monopoly to continue the nonconforming use in the prohibited area, and to profit by it and thus recoup his investment over the duration of the amortization period established by the ordinance. It is pointed out that the ordinance does not take the realty itself, but rather it simply brings it within the residential classification and that, as such, the property still has value to the owner. It is further pointed out that in a case such as this the billboards themselves are not taken and thus the owner is free to remove them to another location where such a use is permitted.

In final analysis, the position of the authorities relied upon by the City of New Castle may be summed up in the following statement from *Grant v. Mayor and City Council of Baltimore, supra,* at 129 A.2d 369:

"The distinction between an ordinance that restricts future uses and one that requires existing uses to stop after a reasonable time, is not a difference in kind but one of degree and, in each case, constitutionality depends on overall reasonableness, on the importance of the public gain in relation to the private loss."

In this sense the right of the public to be relieved from the onus of commercial billboards in residential areas over a reasonable period of time is said to predominate over the right of a property owner to rely on the nonconforming use concept so as to maintain an off-site sign in a residentially zoned area indefinitely.

The aforesaid authorities cited by Rollins view the matter differently. Those cases recognize that the value of property lies in the right to use it. They stress the principle that a lawful use of property which predates a zoning ordinance constitutes a vested property right which is guaranteed to the landowner as a nonconforming use until such time as it is voluntarily terminated or abandoned. They view an ordinance which compels the termination of the nonconforming use against the will of the landowner, and without compensation, to constitute an unconstitutional taking of private property. As stated by the Ohio Supreme Court in *City of Akron v. Chapman, supra,* at 116 N.E.2d 700:

"The right to continue to use one's property in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time it was acquired is within the protection of Section 1, Article XIV, Amendments, Constitution of the United States, and Section 16, Article I of the Ohio Constitution, which provide that no person shall be deprived of life, liberty or property without due process of law."

And, in *Hoffman v. Kinealy, supra,* the situation was summed up as follows at 389 S.W.2d at 753:

"The amortization provision under review would terminate and take from instant relators the right to continue a lawful nonconforming use of their lots which has been exercised and enjoyed since 1910 —a right of the character to which the courts traditionally have referred as a 'vested right.' To our knowledge, no one has, as yet, been so brash as to contend that such a pre-existing lawful nonconforming use properly might be terminat-

ed *immediately.* In fact, the contrary is implicit in the amortization technique itself which would validate a taking *presently* unconstitutional by the simple expedient of *postponing* such taking for a 'reasonable' time. All of this leads us to suggest, as did the three dissenting justices in *Harbison v. City of Buffalo,* supra, 152 N.E.2d at 49, that it would be a strange and novel doctrine indeed which would approve a municipality taking private property for public use without compensation if the property was not too valuable and the taking was not too soon, and prompts us to repeat the caveat of Mr. Justice Holmes in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322, 326, 28 A.L.R. 1321, that '[w]e are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.' " (Emphasis in the original.)

The choice between the respective positions of the parties thus puts at loggerheads two separate constitutional principles, namely, the proposition that through zoning a person shall not be deprived of property rights without due process of law, see *Shellburne, Inc. v. Roberts,* Del.Supr., 43 Del.Ch. 276, 224 A.2d 250 (1966), versus the now well-established principle that under the police power of the State the use of private property may be reasonably regulated and restricted through zoning so long as it bears a substantial relation to the health, safety and general welfare of the community. *Delaware Constitution of 1897,* Article II, § 25; 22 *Del.C.* § 301; *In re Ceresini,* Del. Super., 38 Del. 134, 189 A. 443 (1936). As applied to an ordinance which purports to amortize and eliminate an otherwise valid nonconforming use, the parties concede that there is logical justification and valid criticism attached to both sides of the argument. As a result, they suggest that the Court will simply have to pick between the two.

I think, however, that the Court has a duty to approach the dilemma in light of our existing case precedents. On this score, there is not much with which to work. But there is something.

■ To begin with, our law recognizes that the value of property does not consist solely in holding the title to it. As stated in *In re Ceresini, supra,* "there can be no conception of property aside from its control, use and enjoyment; and upon its use and enjoyment necessarily depends its value." 189 A. 449. Therefore, obviously, it is the use of property that cannot be unreasonably regulated or restricted through zoning.

In the case of *New Castle County v. Harvey,* Del.Ch., 315 A.2d 616 (1974), at least certain aspects of which were recently approved by our Supreme Court in *Hooper v. Del. Alcoholic Beverage Control Com'n,* Del.Supr., 409 A.2d 1046 (1979), the following statement concerning the scope of a nonconforming use appears at 315 A.2d 619:

> "In my opinion, the [nonconforming use] exception must be interpreted so as to guarantee that zoning will not take from an owner property rights which he already legally possessed, because to do otherwise would be confiscatory and thus, in all probability, unconstitutional. 2 Rathkopf, The Law of Zoning And Planning 58–1."

And in *Shellburne, Inc. v. Roberts, supra,* in which it was held that the mere issuance of a building permit for a particular use did not create a vested right in a particular zoning classification, the Supreme Court, in pointing out nonetheless that a substantial change in position in reliance on the permit could overcome a subsequent zoning change, saw fit to state as follows at 224 A.2d 254:

> "Under certain circumstances, the law recognizes a *vested right* to construct and use under a valid building permit issued prior to a zoning change which would otherwise prohibit such construction and usage. *The basis for the rule is the same* as that underlying 9 *Del.C.* § 2620 and Article XVII, Section 1 of the Zoning

Code of New Castle County which prevent zoning changes from being retroactively applied to nonconforming uses and structures." (Emphasis added.)

While apparently no reported Delaware case expressly so holds, I think the fair intendment of these decisions is that the owner of a nonconforming use has a vested right to continue to use his property for that purpose despite the enactment of a zoning ordinance under which the nonconforming use would otherwise be prohibited. Compare also, *Minquadale Civic Association v. Kline,* Del.Sch., 212 A.2d 811 (1965). As such, I think they can be said to further stand for the proposition that such a vested right in a pre-existing use cannot be eliminated by a subsequent zoning enactment.

Simply stated, if such a vested property right cannot be taken away by the initial zoning enactment, how can it be taken away by a later amendment to that enactment, especially when the true underlying justification for the amendment is that the original zoning ordinance has not succeeded in doing away with the vested property right as quickly as it had been hoped? In such a situation the use, and thus the vested property right, has not changed. It has remained constant throughout. The change that has occurred lies in the patience of the original zoning plan.

Viewed from this perspective I find myself unable to agree with the rationale of the authorities cited by the City of New Castle, namely, that the distinction between an ordinance that restricts a future use of property and one that requires existing lawful uses to cease after a reasonable period of time is merely a difference in degree rather than a difference in kind. I think we are talking about a difference in kind here.

The nonconforming use concept was born of due process considerations. It recognized that zoning, even though in the public interest, should not be permitted to take a vested property right from a citizen. Rath-

er, it permits the right, and thus the use, to run its course and to be terminated by the owner of it, whether through voluntary change, abandonment, or otherwise. Once terminated by conduct attributable .to the owner of the use, the zoning restriction as to the future use of the property prevents the nonconformity from being revived or renewed. In this sense, the zoning ordinance does not take from the property owner that which he possessed. It leaves the decision to the property owner based upon conditions as to which he is forewarned under the terms of the zoning ordinance.

The amortization approach of the City of New Castle, however, does not do this. It does not leave the decision to the owner of the use. Rather, it tells him when, in the opinion of the municipality, he has had enough. In this sense it is the ordinance itself which takes from him that which he already had. To say that the difference between the two approaches is merely one of degree is, it seems to me, to emphasize the result, i.e., the eventual termination of the nonconforming use, and to disregard the manner in which it is accomplished. But the difference, as I see it, is really one in kind since it pits what, in effect, is a voluntary surrender of a vested property right against one that is involuntary. And to say that one is being made to surrender an existing property right on reasonable terms under the particular circumstances does not make it any less involuntary.

It is for this reason that I am persuaded that the ordinance of the City of New Castle here cannot be enforced against Rollins. To uphold it would be to recognize that the City has the power through its zoning authority to cut off the continuation of an otherwise lawful use of property. While concededly it has the power in a proper case to terminate an existing use through eminent domain, and while it could take action to curtail a use which had reached the proportions of a nuisance, I do not feel that it has the authority to accomplish the same result by means of a zoning ordinance.

The general statute by which all municipalities in this State derive their zoning authority is 22 *Del.C.* § 301. That statute reads as follows:

"For the purpose of promoting health, safety, morals or the general welfare of the community, the legislative body of cities and incorporated towns may *regulate and restrict the* height, number of stories and size of buildings and other structures, percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and *use of* buildings, structures and *land for trade, industry,* residence or other purposes." (Emphasis added.)

The key word in this statute is the word "restrict." The City cites various authorities from other jurisdictions for the proposition that the power to prohibit is necessarily incompassed within the meaning of the word "restrict." Indeed, some cases may be construed to have so held in a zoning context such as this.

In Delaware, however, the word restrict has been defined as meaning "to restrain within bounds; to limit; to confine." *State v. Terry,* Del.Super., 39 Del. 32, 196 A. 163, 167 (1937). Cases from other jurisdictions adopting this same definition have seen fit to add that the meaning of the term does not include the power to destroy or prohibit. *Forest Land Co. v. Black,* S.C.Supr., 216 S.C. 255, 57 S.E.2d 420 (1950); *Dart v. City of Gulfport,* Miss.Supr., 147 Miss. 534, 113 So. 441 (1927):

■ The zoning authority given to municipalities by 22 *Del.C.* § 301 does not expressly grant the power to prohibit or destroy a lawful property use which predates a zoning enactment. It is arguable at best that the word "restrict" as contained in the enabling statute carries this power with it. In my view, it does not and should not be so construed.

■ Municipalities have no inherent power to zone property except as the General Assembly may delegate. *Boozer v. Johnson,* Del.Ch., 33 Del.Ch. 554, 98 A.2d 76 (1953). Such being the case, and the ordinance in issue here having been analyzed as one which is intended to prohibit or destroy an otherwise lawfully vested property right of the defendant Rollins to use its property for the purpose of maintaining off-site signs, it is my conclusion that the City of New Castle has not been granted the power by the General Assembly to enact such an ordinance. Accordingly, it will not be enforced in this proceeding.

I can well appreciate the problem caused by the continuation of off-site signs in residential areas. With respect to billboards there is great temptation to support a reasonable means to bring about their removal, especially after a prolonged period of time. In the scheme of things, billboards do not evoke much sympathy. However, it is the concept that is bothersome. It is a concept that is potentially far-reaching.

If a municipality can terminate a billboard use today and a junk yard tomorrow, how long will it take to go after the outdated shopping center or the cattle farm brought within municipal boundaries through the annexation of an area? Certainly, if the so-called amortization of a conflicting use will justify the elimination of the one, it will justify the elimination of the other. The power has awesome potential, especially if misused in the name of the public good. If municipalities are to be given this power, then I think that it should be made clear by the General Assembly and accomplished by means of a legislative grant which can be properly measured against constitutional safeguards. It is not, in my opinion, a power that should be created by judicial decision under less than compelling circumstances.

Judgment will be entered in favor of the defendant dismissing the complaint.